[Civ. No. 16717.  First Dist., Div. One.  Apr. 17, 1956.]

WILLYS OF MARIN COMPANY (a Copartnership) et al.,
Appellants, v. COLUMBUS PIERCE et al., Respondents.

COLUMBUS L. PIERCE et al., Respondents, v. RUSSELL
L. FARMER et al., Appellants.

Carl B. Shapiro for Appellants.

Gardiner, Riede & Elliott for Respondents.

AGEE, J. pro tem.*—Appellants appeal from judgments against them in two actions which by stipulation were consolidated for trial. ■ There is no reporter's transcript and the record as disclosed by the clerk's transcript is relied upon herein for the facts. In the absence of such reporter's transcript, it must be assumed that the findings are supported by sufficient evidence. (*Shuken* v. *Cohen,* 179 Cal. 279, 283 [176 P. 447]; *Estate of Stevens,* 27 Cal.2d 108, 116 [162 P.2d 918].)

On September 28, 1952, respondents (husband and wife) leased a garage building to appellants for a period of three years, commencing on October 1, 1952. The lease provided for a total rental of $19,800, payable at $450 per month for the first year, $550 per month for the second year, and $650 per month for the third year. The monthly payments were payable in advance on the first day of each month. As partial security, two of the appellants executed a deed of trust on real property they owned which named respondent husband as beneficiary. This deed of trust recited that its purpose was to secure the performance of the lease. It provided that "Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, all sums secured hereby shall immediately become due and payable at the option of the Beneficiary."

---

*Assigned by Chairman of Judicial Council.

On January 26, 1954, after default in payment of rent, respondents caused the real property to be sold under the power of sale provisions of the deed of trust. The amount of rent then due and the proceeds realized on the sale do not appear in the record. However, the findings in the declaratory relief action, hereinafter mentioned, recite that the sale held on January 26, 1954, ''was for the limited and specific purpose of satisfying the installments of rent accrued and due prior to said date, and such sale did not purport to be and was not for the purpose of satisfying any installment of rent accrued or due subsequent to January 26, 1954.'' In other words, respondents did not exercise their option to declare all of the rentals called for in the lease due and payable.

On March 8, 1954, appellants filed an action against respondents for declaratory relief, alleging that there was a dispute between the parties as to whether the sale under the deed of trust had extinguished any obligation to pay rent after January, 1954.

On May 13, 1954, respondents served appellants with a notice to pay rent or quit. The notice recited that rent had been paid through January, 1954, but that no rentals had been paid since, and that four months' unpaid rental had accrued, amounting to a total of $2,200.

On May 18, 1954, respondents filed an unlawful detainer action against appellants and, as before stated, the two actions were consolidated for trial pursuant to stipulation. In the unlawful detainer action, the judgment gave respondents a writ of possession and rent and damages for the period from February 1, 1954, through August, 1954, in the total sum of $3,850. The judgment held that respondents were not precluded from bringing the unlawful detainer action by reason of the trustee's sale or any of the provisions of sections 726, 580a or 580d of the Code of Civil Procedure. The judgment in the declaratory relief action stated that the trustee's sale on January 26, 1954, did not satisfy or discharge any installment of rent accruing under the lease subsequent to said sale and that appellants were liable for the rent accruing on and after February 1, 1954.

Appellants first argue that the remedy of unlawful detainer was not available to respondents because of section 726 of the Code of Civil Procedure, which provides: ''There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon

real or personal property, which action must be in accordance with the provisions of this chapter." Respondents reply that at the time of the commencement of the unlawful detainer action there was no longer any mortgage in existence, the same having been extinguished by the trustee's sale on January 26, 1954. In *J. I. Case Threshing Machine Co.* v. *Copren Bros.*, 32 Cal.App. 194, 197 [162 P. 647], the court said: "So in this case, the property having been sold by the plaintiff acting under the written authorization of the defendants and having ceased to be security for any part of the balance due, the notes were not secured by a mortgage at the time the suit was brought, and section 726 has no application to the situation." In *Merced etc. Bank* v. *Casaccia*, 103 Cal. 641, 644 [37 P. 648], where a collateral security was exhausted before seeking to foreclose the primary mortgage, the court said: "The obvious purpose of the statute [Code Civ. Proc., § 726] is to compel one who has taken a special lien to secure his debt to exhaust his security before having recourse to the general assets of the debtor. When he has done this, or when, without his fault, the security has been lost, the policy of the law does not prohibit a personal action."

Respondents also point out that an unlawful detainer action does not come within the purview of section 726 of the Code of Civil Procedure, citing *Toplitz* v. *Standard Co.*, 25 Cal. App. 575 [143 P. 52], and *Ashcroft Estate Co.* v. *Nelson*, 26 Cal.App. 400 [147 P. 101]. Both of these cases so hold. In the Toplitz case, *supra*, at page 576, the court said: "Unlawful detainer is primarily a possessory action, which cannot be defeated or delayed by the fact that the landlord has taken security for his rent, without destroying the manifest design of the legislature (Code Civ. Proc., § 1161) to provide a summary remedy for the recovery of the possession of the premises withheld by a tenant in violation of the covenants of a lease or other agreement. Incidentally a judgment for the plaintiff in an action of unlawful detainer may award such actual damages as may have been occasioned by a withholding over after a breach of the covenants of the lease; . . . *but in no sense is an action of unlawful detainer one of debt. Consequently it cannot be said that the present action is one for the recovery of a debt or the enforcement of a right secured by the mortgage in controversy.*" (Emphasis added.)

Appellants argue that respondents' primary purpose in the unlawful detainer action was to recover unpaid rents, not possession, and that the reasoning of the Toplitz and Ash-

croft cases therefore does not apply. There is nothing in the record to justify this conclusion. ■ It is true that the notice to quit served on appellants by respondents did give the former the alternative of paying such rents or giving up possession. But respondents were required by law (Code Civ. Proc., § 1161, subd. (2)) to give such alternative when the breach of the lease is based upon failure to pay rent.

■ Appellants state (and respondents agree) that the deed of trust was security for the *whole* obligation under the lease, to wit, payment of rentals totaling $19,800, in monthly installments. Therefore, appellants continue, any action which seeks a recovery for any installments accruing *after* the trustee's sale in January, 1954, is in effect an attempt to recover a deficiency judgment. Section 580a of the Code of Civil Procedure provides in part as follows: ''Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale . . . The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale . . . Any such action must be brought within three months of the time of sale under such deed of trust or mortgage.'' Respondents contend that they do not have to comply with this section. They again point out that an unlawful detainer action is not one for a ''money judgment.'' It is a statutory action for possession and the money judgment is a mere incident. (*Toplitz* v. *Standard Co.,* and *Ashcroft Estate Co.* v. *Nelson, supra.*) Section 1161 of the Code of Civil Procedure provides for an unlawful detainer action without limiting it to cases where there is no security. Section 1174 of the Code of Civil Procedure provides for judgment *''for the restitution of the premises''* and then goes on to provide incidentally that the court ''shall *also* assess the damages occasioned to the plaintiff by any . . . unlawful detainer, . . . and find the amount of any rent due . . .'' (Emphasis added.)

█ Appellants also argue that section 580d of the Code of Civil Procedure precludes the relief obtained by respondents. This section provides: "No judgment shall be rendered for any deficiency upon a *note* secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust." (Emphasis added.) In addition to what has already been said about an unlawful detainer action not being an action to recover a deficiency, respondents point out the difference between a lease and a note. "A lease, as ordinarily understood, is an agreement whereby the relation of landlord and tenant is created." (*Stone* v. *City of Los Angeles*, 114 Cal.App. 192, 198 [299 P. 838].) Section 3266 of the Civil Code defines "note" as meaning a "negotiable promissory note." In 1933, when section 580a was first enacted, the Legislature used the broad term "obligation." As was said in *Schwartz* v. *California Claim Service, Ltd.*, 52 Cal.App.2d 47, 54 [125 P.2d 883] : " 'Obligation' is a word of broad meaning . . ." In 1940, when section 580d was enacted, the limited term "note" was used. It seems obvious that section 580d does not apply to obligations other than promissory notes.

Appellants cite *Brown* v. *Jensen*, 41 Cal.2d 193 [259 P.2d 425], and *Freedland* v. *Greco*, 45 Cal.2d 462 [289 P.2d 463] (Nov. 1955). Both of these decisions involved notes secured by purchase price deeds of trust. In discussing section 580d in the Freedland case, the Supreme Court said, at page 477 : "While other sections of the Code of Civil Procedure which deal with deficiency judgments (Code Civ. Proc., §§ 726, 580a, 580b) refer to 'debts,' 'obligations,' or 'contracts' secured by a trust deed may be broader than the word 'note' used in section 580d, the fact remains that *here we have a note* . . ." (Emphasis added.)

█ Lastly, appellants argue that the deed of trust was in the nature of a deposit to secure the payment of rent; that if there was no breach of the lease, the deposit was to be returned, i.e., the real property was to be reconveyed; that if there was a breach of the lease by failure to pay rent, the question of the value of the deposit becomes important in order to determine to what extent rent, both past and future, had been paid by what appellants term the landlord's "appropriation" (foreclosure) of the "deposit" (deed of trust).

Appellants point out that if the deposit had been a sum of money, the landlord would be entitled to appropriate only so much of it as would be enough to cure the breach and that respondents, having taken no steps to appraise the deposit, should be required to treat the security as equivalent in value to the *total* amount of rent which it secured. This being so, appellants conclude that the foreclosure effected payment of all rent, future as well as past. The record is silent as to the amount of rent due at the time of the trustee's sale and as to the amount bid at such sale. The price obtained for property at a public sale is competent, though not conclusive, evidence of its value. (18 Cal.Jur.2d p. 625.) In the absence of any evidence to the contrary, this would seem to be a proper basis of evaluation. Appellants have never claimed that the sale was not held in accordance with the legal procedure required in foreclosing under a deed of trust. As previously stated, the trial court found that the sale was for the limited and specific purpose of satisfying rents due prior to the sale. If any money remained after satisfying these past due rents and the expenses of sale, appellants (as trustor) would have been entitled to it. And if respondents had not turned over to appellants any such remainder, appellants would certainly have been entitled to a credit to this extent on rentals accruing on and after February 1, 1954. On the contrary, the trial court's finding ''that defendants [appellants] have paid no rent whatever for the use or possession of any portion of said premises on or subsequent to February 1, 1954,'' is in effect a holding that appellants had no such credit or offset.

We conclude that both judgments should be affirmed, and it is so ordered.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 17, 1956.